**UNITED STATES DISTRICT COURT**
**DISTRICT OF MONTANA**
**HELENA DIVISION**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,

        Plaintiff,

                                 Civil Action No. _____

      v.

BNSF RAILWAY COMPANY
and MONTANA RAIL LINK, INC.,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REMEDIAL ACTION CONSENT DECREE**

# TABLE OF CONTENTS

I.        BACKGROUND ......................................................................................................... 1
II.       JURISDICTION ......................................................................................................... 2
III.      PARTIES BOUND ..................................................................................................... 2
IV.       DEFINITIONS............................................................................................................ 3
V.        GENERAL PROVISIONS ........................................................................................ 6
VI.       PERFORMANCE OF THE WORK ......................................................................... 7
VII.      REMEDY REVIEW .................................................................................................. 9
VIII.     PROPERTY REQUIREMENTS .............................................................................. 9
IX.       FINANCIAL ASSURANCE .................................................................................... 11
X.        PAYMENTS FOR FUTURE RESPONSE COSTS ............................................... 15
XI.       INDEMNIFICATION AND INSURANCE ............................................................ 17
XII.      FORCE MAJEURE ................................................................................................. 19
XIII.     DISPUTE RESOLUTION ....................................................................................... 20
XIV.      STIPULATED PENALTIES ................................................................................... 22
XV.       COVENANTS BY PLAINTIFF .............................................................................. 25
XVI.      COVENANTS BY SETTLING DEFENDANTS.................................................... 27
XVII.     EFFECT OF SETTLEMENT; CONTRIBUTION ............................................... 29
XVIII.    ACCESS TO INFORMATION ............................................................................... 30
XIX.      RETENTION OF RECORDS ................................................................................. 31
XX.       NOTICES AND SUBMISSIONS............................................................................. 32
XXI.      RETENTION OF JURISDICTION ........................................................................ 34
XXII.     APPENDICES .......................................................................................................... 34
XXIII.    MODIFICATION ..................................................................................................... 34
XXIV.     LODGING AND OPPORTUNITY FOR PUBLIC COMMENT............................ 35
XXV.      SIGNATORIES/SERVICE...................................................................................... 35
XXVI.     FINAL JUDGMENT ............................................................................................... 35

# I.   BACKGROUND

A.      The United States of America (United States), on behalf of the Administrator of the United States Environmental Protection Agency (EPA), filed a complaint in this matter pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act, as amended (CERCLA), 42 U.S.C. §§ 9606 and 9607.

B.      The United States in its complaint seeks, *inter alia*: (1) reimbursement of costs incurred by EPA and the Department of Justice (DOJ) for response actions at the East Helena Superfund Site in East Helena, Montana (Site), together with accrued interest; and (2) performance of response actions by the defendants at the Site consistent with the National Contingency Plan, 40 C.F.R. Part 300 (NCP).

C.      In accordance with the NCP and Sections 121(f)(1)(F) and 122 (j)(1) of CERCLA, 42 U.S.C. §§ 9621(f)(1)(F) and § 9622(j)(1), EPA notified the State of Montana (the State) on May 7, 2020 of negotiations with potentially responsible parties (PRPs) regarding implementation of remedial action for a portion of Operable Unit 2 (OU2) of the Site.

D.      The defendants that have entered into this Consent Decree (Settling Defendants) do not admit any liability to Plaintiff arising out of the transactions or occurrences alleged in the complaint, nor do they acknowledge that the release or threatened release of hazardous substances at or from the Site constitutes an imminent and substantial endangerment to the public health or welfare or the environment.

E.      The Site is located in and around the City of East Helena, in Lewis & Clark County, Montana, and includes the former ASARCO lead smelter facility, nearby residential subdivisions, commercial properties, rural developments such as farms and homes, railroad right-of-way areas, and undeveloped lands.

F.      Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Site on the National Priorities List (NPL), set forth at 40 C.F.R. Part 300, Appendix B, by publication in the Federal Register in September 1984.

G.      In November 1989, EPA issued a Record of Decision (ROD) selecting response actions under CERCLA to address sources of contamination at the former ASARCO smelter facility (OU1).

H.      In response to a release or a substantial threat of a release of hazardous substances at or from the Site, a Remedial Investigation and Feasibility Study (RI/FS) for OU2 – residential soils and undeveloped lands, which includes the Railyard Property – of the Site commenced on December 31, 2005, pursuant to 40 C.F.R. § 300.430. The RI/FS was completed on September 17, 2009.

I.      On January 12, 2007, EPA issued a Proposed Plan for final cleanup of East Helena's residential soils and undeveloped lands (OU2).

J.      The decision by EPA on the remedial action to be implemented at OU2 of the Site is embodied in a ROD, executed on September 17, 2009. The ROD included a responsiveness summary to the public comments. Notice of the final plan was published in accordance with Section 117(b) of CERCLA, 42 U.S.C. § 9617(b).

K.      Based on the information presently available to EPA, EPA believes that the Work will be properly and promptly conducted by Settling Defendants if conducted in accordance with this Consent Decree and its appendices.

L.      Solely for the purposes of Section 113(j) of CERCLA, 42 U.S.C. § 9613(j), the remedy set forth in the ROD and the Work to be performed by Settling Defendants shall constitute a response action taken or ordered by the President for which judicial review shall be limited to the administrative record.

M.      The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and implementation of this Consent Decree will expedite the cleanup of the Site and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II.      JURISDICTION

1.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9606, 9607, and 9613(b). This Court also has personal jurisdiction over Settling Defendants. Solely for the purposes of this Consent Decree and the underlying complaint, Settling Defendants waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District. Settling Defendants shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III.      PARTIES BOUND

2.      This Consent Decree is binding upon the United States and upon Settling Defendants and their successors and assigns. Any change in ownership or corporate or other legal status of a Settling Defendant including, but not limited to, any transfer of assets or real or personal property, shall in no way alter such Settling Defendant's responsibilities under this Consent Decree.

3.      Settling Defendants shall provide a copy of this Consent Decree to each contractor hired to perform the Work and to each person representing any Settling Defendant with respect to the Site or the Work, and shall condition all contracts entered into hereunder upon performance of the Work in conformity with the terms of this Consent Decree. Settling Defendants or their contractors shall provide written notice of the Consent Decree to all subcontractors hired to perform any portion of the Work. Settling Defendants shall nonetheless be responsible for ensuring that their contractors and subcontractors perform the Work in

accordance with the terms of this Consent Decree. With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual relationship with Settling Defendants within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

## IV.   DEFINITIONS

4.      Unless otherwise expressly provided in this Consent Decree, terms used in this Consent Decree that are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations. Whenever terms listed below are used in this Consent Decree or its appendices attached hereto and incorporated herein, the following definitions shall apply solely for purposes of this Consent Decree:

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act, as amended, 42 U.S.C. §§ 9601-9675.

"Consent Decree" shall mean this consent decree and all appendices attached hereto (listed in Section XXII). In the event of conflict between this Consent Decree and any appendix, this Consent Decree shall control.

"Day" or "day" shall mean a calendar day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal or State holiday, the period shall run until the close of business of the next working day.

"DOJ" shall mean the United States Department of Justice and its successor departments, agencies, or instrumentalities.

"East Helena Superfund Site Special Account" shall mean the special account, within the EPA Hazardous Substances Superfund, established for the Site by the EPA pursuant to Section 122(b)(3) of CERCLA, 42 U.S.C. § 9622(b)(3).

"Effective Date" shall mean the date upon which the approval of this Consent Decree is recorded on the Court's docket.

"EPA" shall mean the United States Environmental Protection Agency and its successor departments, agencies, or instrumentalities.

"EPA Hazardous Substance Superfund" shall mean the Hazardous Substance Superfund established by the Internal Revenue Code, 26 U.S.C. § 9507.

"Future Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States incurs in reviewing or developing plans, reports, and other deliverables submitted pursuant to this Consent Decree, in overseeing implementation of the Work, or otherwise implementing, overseeing, or enforcing this Consent Decree, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to ¶ 11 (Emergencies and Releases), ¶ 22 (Access to Financial Assurance), Section VII (Remedy Review), Section VIII (Property Requirements) (including the cost of attorney time and any monies paid to secure or enforce access or land, water, or other resource use restrictions

and/or to secure, implement, monitor, maintain, or enforce Institutional Controls including the amount of just compensation), and Section XIII (Dispute Resolution), and all litigation costs. Future Response Costs also includes Agency for Toxic Substances and Disease Registry (ATSDR) costs associated with the Site.

"Institutional Controls" shall mean Proprietary Controls and state or local laws, regulations, ordinances, zoning restrictions, or other governmental controls or notices that: (a) limit land, water, or other resource use to minimize the potential for human exposure to Waste Material at or in connection with the Site; (b) limit land, water, or other resource use to implement, ensure non-interference with, or ensure the protectiveness of the RA; and/or (c) provide information intended to modify or guide human behavior at or in connection with the Site.

"Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year. Rates are available online at https://www.epa.gov/superfund/superfund-interest-rates.

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"Operable Unit 2" or "OU2" means those portions of the Site consisting of non-smelter property surface soils in the residential areas (including commercial areas), irrigation ditches, rural developments, and surrounding undeveloped land, including the Railyard Property, as they are set forth in EPA's 2009 Record of Decision.

"Operation and Maintenance" or "O&M" shall mean all activities required to operate, maintain, and monitor the effectiveness of the Remedial Action as specified in the SOW or any EPA-approved O&M Plan.

"Owner Settling Defendant" shall mean any Settling Defendant that owns or controls the Railyard Property, including BNSF.

"Paragraph" or "¶" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper or lower case letter.

"Parties" shall mean the United States and Settling Defendants.

"Performance Standards" shall mean the cleanup levels and other measures of achievement of the remedial action objectives, as set forth in the ROD.

"Plaintiff" shall mean the United States.

"Proprietary Controls" shall mean easements or covenants running with the land that (a) limit land, water, or other resource use and/or provide access rights and (b) are created pursuant

to common law or statutory law by an instrument that is recorded in the appropriate land records office.

"Railyard Property" shall mean the railroad railyard in East Helena, Montana, including portions of Sectors 16-25 of the Remedial Design for OU2, and depicted generally on the map attached as Appendix D.

"RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901-6992 (also known as the Resource Conservation and Recovery Act).

"Record of Decision" or "ROD" shall mean the EPA Record of Decision relating to Operable Unit 2 at the Site signed on September 17, 2009, by the Regional Administrator, EPA Region 8, or his/her delegate, and all attachments thereto. The ROD is attached as Appendix A.

"Remedial Action" shall mean all activities Settling Defendants are required to perform under the Consent Decree and the SOW to implement the ROD, Remedial Design, and Remedial Action Work Plan, pertaining to the Railyard Property.

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Settling Defendants" shall mean BNSF Railway Company and Montana Rail Link, Inc.

"Site" shall mean the East Helena Superfund Site, EPA I.D. No. 0830, placed on the EPA National Priorities List on September 21, 1984, encompassing the Town of East Helena, including the Railyard Property, the former lead and zinc smelter facility, and certain undeveloped lands around the Town of East Helena, in Lewis & Clark County, Montana, and depicted generally on the map attached as Appendix B.

"State" shall mean the State of Montana.

"Statement of Work" or "SOW" shall mean the document describing the activities Settling Defendants must perform to implement the Remedial Action and O&M in the Railyard Property of OU2 of the Site, that is agreed upon under this Consent Decree, as set forth in Appendix B to this Consent Decree, and any modifications made thereto in accordance with this Consent Decree.

"Supervising Contractor" shall mean the principal contractor retained by Settling Defendants to supervise and direct the implementation of the Work under this Consent Decree.

"Transfer" shall mean to sell, assign, convey, lease, mortgage, or grant a security interest in, or where used as a noun, a sale, assignment, conveyance, or other disposition of any interest by operation of law or otherwise.

"United States" shall mean the United States of America and each department, agency, and instrumentality of the United States, including EPA.

"Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any pollutant or contaminant under Section 101(33) of

CERCLA, 42 U.S.C. § 9601(33); and (3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C.§ 6903(27).

"Work" shall mean all activities and obligations Settling Defendants are required to perform under this Consent Decree, except the activities required under Section XIX (Retention of Records).

## V.    GENERAL PROVISIONS

5.    **Objectives of the Parties**. The objectives of the Parties in entering into this Consent Decree are to protect public health or welfare or the environment by the implementation of response actions at the Railyard Property by Settling Defendants, to provide for the payment of response costs by Settling Defendants of Future Response Costs of Plaintiff, and to resolve the claims of Plaintiff against Settling Defendants as provided in this Consent Decree.

6.    **Commitments by Settling Defendants**

a.    Settling Defendants shall finance and perform the Work in accordance with this Consent Decree and all deliverables developed by Settling Defendants and approved or modified by EPA pursuant to this Consent Decree. Settling Defendants shall pay the United States for its Future Response Costs as provided in this Consent Decree.

b.    Settling Defendants' obligations to finance and perform the Work, including obligations to pay amounts due under this Consent Decree, are joint and several. In the event of the insolvency of any Settling Defendant or the failure by any Settling Defendant to implement any requirement of this Consent Decree, the remaining Settling Defendant shall complete all such requirements.

7.    **Compliance with Applicable Law**. Nothing in this Consent Decree limits Settling Defendants' obligations to comply with the requirements of all applicable federal and state laws and regulations. Settling Defendants must also comply with all applicable or relevant and appropriate requirements of all federal and state environmental laws as set forth in the ROD and the SOW. The activities conducted pursuant to this Consent Decree, if approved by EPA, shall be deemed to be consistent with the NCP as provided in Section 300.700(c)(3)(ii) of the NCP.

8.    **Permits**

a.    As provided in Section 121(e) of CERCLA, 42 U.S.C. § 9621(e), and Section 300.400(e) of the NCP, no permit shall be required for any portion of the Work conducted entirely on-site (i.e., within the areal extent of contamination or in very close proximity to the contamination and necessary for implementation of the Work). Where any portion of the Work that is not on-site requires a federal or state permit or approval, Settling Defendants shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

b.    Settling Defendants may seek relief under the provisions of Section XII (Force Majeure) for any delay in the performance of the Work resulting from a failure to obtain,

or a delay in obtaining, any permit or approval referenced in ¶ 8.a and required for the Work, provided that they have submitted timely and complete applications and taken all other actions necessary to obtain all such permits or approvals.

      c.    This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal or state statute or regulation.

## VI.    PERFORMANCE OF THE WORK

9.    **Coordination and Supervision**

    a.    **Project Coordinators**

      (1)    Settling Defendants' Project Coordinator must have sufficient technical expertise to coordinate the Work. Settling Defendants' Project Coordinator may not be an attorney representing any Settling Defendant in this matter and may not act as the Supervising Contractor. Settling Defendants' Project Coordinator may assign other representatives, including other contractors, to assist in coordinating the Work.

      (2)    EPA has designated Bridget Williams as EPA's Project Coordinator. EPA may designate other representatives, which may include its employees, contractors and/or consultants, to oversee the Work. EPA's Project Coordinator will have the same authority as a remedial project manager and/or an on-scene coordinator, as described in the NCP. This includes the authority to halt the Work and/or to conduct or direct any necessary response action when he or she determines that conditions at the Site constitute an emergency or may present an immediate threat to public health or welfare or the environment due to a release or threatened release of Waste Material.

      (3)    Settling Defendants' Project Coordinators shall meet with EPA's Project Coordinator at least weekly during performance of the Work at the Railyard Property.

    b.    **Supervising Contractor**. Settling Defendants' proposed Supervising Contractor must have sufficient technical expertise to supervise the Work and a quality assurance system that complies with ANSI/ASQC E4-2004, Quality Systems for Environmental Data and Technology Programs: Requirements with Guidance for Use.

    c.    **Procedures for Disapproval/Notice to Proceed**

      (1)    Settling Defendants shall designate, and notify EPA, within 10 days after the Effective Date, of the names, titles, contact information, and qualifications of the Settling Defendants' proposed Project Coordinator and Supervising Contractor, whose qualifications shall be subject to EPA's review for verification based on objective assessment criteria (e.g., experience, capacity, technical expertise) and do not have a conflict of interest with respect to the project.

(2)      EPA shall issue notices of disapproval and/or authorizations to proceed regarding the proposed Project Coordinator and Supervising Contractor, as applicable. If EPA issues a notice of disapproval, Settling Defendants shall, within 30 days, submit to EPA a list of supplemental proposed Project Coordinators and/or Supervising Contractors, as applicable, including a description of the qualifications of each. EPA shall issue a notice of disapproval or authorization to proceed regarding each supplemental proposed coordinator and/or contractor. Settling Defendants may select any coordinator/contractor covered by an authorization to proceed and shall, within 21 days, notify EPA of Settling Defendants' selection.

(3)      Settling Defendants may change their Project Coordinator and/or Supervising Contractor, as applicable, by following the procedures of ¶¶ 9.c(1) and 9.c(2).

(4)      Notwithstanding the procedures of ¶¶ 9.c(1) through 9.c(3), Settling Defendants have proposed, and EPA has authorized Settling Defendants to proceed, regarding the following Project Coordinator and Supervising Contractor:

> Devin Clary
> Director of Environmental
> Montana Rail Link
> 1010 International Drive
> Missoula, MT  59808
> (406) 523-1582
> dclary@mtrail.com

> John De Jong
> Project Manager
> Arcadis U.S., Inc.
> 695 N. Legacy Ridge Drive, Suite 200
> Liberty Lake, WA  99019
> (408) 772-5714
> John.Dejong@arcadis.com

10.      **Performance of Work in Accordance with SOW**. Settling Defendants shall: (a) perform the Remedial Action and (b) operate, maintain, and monitor the effectiveness of the Remedial Action; all in accordance with the SOW and all EPA-approved, conditionally-approved, or modified deliverables as required by the Consent Decree and SOW. All deliverables required to be submitted for approval under the Consent Decree or SOW shall be subject to approval by EPA in accordance with ¶ 3.4 (Approval of Deliverables) of the SOW.

11.      **Emergencies and Releases**. Settling Defendants shall comply with the emergency and release response and reporting requirements under ¶ 2.3 (Emergency Response and Reporting) of the SOW. Subject to Section XV (Covenants by Plaintiff), nothing in this

Consent Decree, including ¶ 2.3 of the SOW, limits any authority of Plaintiff: (a) to take all appropriate action to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, or (b) to direct or order such action, or seek an order from the Court, to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site. If, due to Settling Defendants' failure to take appropriate response action under ¶ 2.3 of the SOW, EPA takes such action instead, Settling Defendants shall reimburse EPA under Section X (Payments for Future Response Costs) for all costs of the response action.

12.   **Modification of SOW or Related Deliverables**

a.   If EPA determines that it is necessary to modify the work specified in the SOW and/or in deliverables developed under the SOW in order to achieve and/or maintain the Performance Standards or to carry out and maintain the effectiveness of the Remedial Action, and such modification is consistent with the Scope of the Remedy set forth in ¶ 1.3 of the SOW, then EPA may notify Settling Defendants of such modification. If Settling Defendants object to the modification they may, within thirty (30) days after EPA's notification, seek dispute resolution under Section XIII.

b.   The SOW and/or related deliverables shall be modified: (1) in accordance with the modification issued by EPA; or (2) if Settling Defendants invoke dispute resolution, in accordance with the final resolution of the dispute. The modification shall be incorporated into and enforceable under this Consent Decree and Settling Defendants shall implement all work required by such modification. Settling Defendants shall incorporate the modification into the deliverable required under the SOW, as appropriate.

c.   Nothing in this Paragraph shall be construed to limit EPA's authority to require performance of further response actions as otherwise provided in this Consent Decree.

13.   Nothing in this Consent Decree, the SOW, or any deliverable required under the SOW constitutes a warranty or representation of any kind by Plaintiffs that compliance with the work requirements set forth in the Consent Decree or SOW or any related deliverable will achieve the Performance Standards.

## VII.   REMEDY REVIEW

14.   **Periodic Review**. Settling Defendants shall support EPA's reviews under Section 121(c) of CERCLA, 42 U.S.C. § 9621(c), and applicable regulations, of whether the Remedial Action is protective of human health and the environment.

## VIII.   PROPERTY REQUIREMENTS

15.   **Agreements Regarding Access and Non-Interference.** Settling Defendants shall, with respect to the Railyard Property, provide Plaintiff and its representatives, contractors, and subcontractors railroad-escorted access to such Railyard Property, at all reasonable times, as set forth in this Paragraph. The Railyard Property includes an active railyard and rail lines. Any

such access will be subject to Settling Defendants' Health and Safety Plan, Settling Defendants' railroad safety rules and, where possible, reasonable notice. Notwithstanding any provision of this Consent Decree, EPA retains all of its access authorities and rights, as well as all of its rights to require land/water use restrictions, includes enforcement authorities related hereto, under CERCLA, RCRA, and any other applicable statutes or regulations.

      a.    **Access Requirements**. The following is a list of activities for which access is required regarding the Railyard Property:

      (1)    Monitoring the Work;

      (2)    Verifying any data or information submitted to the United States;

      (3)    Conducting investigations regarding contamination at or near the Site;

      (4)    Obtaining samples;

      (5)    Assessing the need for, planning, or implementing additional response actions at or near the Site;

      (6)    Assessing implementation of quality assurance and quality control practices as defined in the approved construction quality assurance quality control plan as provided in the SOW;

      (7)    Implementing the Work pursuant to the conditions set forth in ¶ 59 (Work Takeover);

      (8)    Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Defendants or their agents, consistent with Section XVIII (Access to Information);

      (9)    Assessing Settling Defendants' compliance with the Consent Decree;

      (10)    Determining whether the Affected Property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted under the Consent Decree; and

      (11)    Implementing, monitoring, maintaining, reporting on, and enforcing any land, water, or other resource use restrictions and Institutional Controls.

      b.    **Land, Water, or Other Resource Use Restrictions**. The following is a list of land, water, or other resource use restrictions potentially applicable to the Affected Property, to be implemented by Settling Defendants:

      (1)    Prohibitions on activities that could interfere with the Remedial Action at the Site;

10

(2)     Prohibitions on the use of contaminated groundwater;

(3)     Prohibitions on activities that could result in exposure to contaminants in subsurface soil or groundwater;

(4)     Measures ensuring that any new structures on the Railyard Property will not be constructed in the following manner which could interfere with the Remedial Action; and

(5)     Measures ensuring that any new structures on the Railyard Property will be constructed in a manner that will minimize potential risk of inhalation of contaminants.

16.     If EPA determines in a decision document prepared in accordance with the NCP that Institutional Controls in the form of state or local laws, regulations, ordinances, zoning restrictions, or other governmental controls or notices are needed, Settling Defendants shall cooperate with EPA's efforts to secure and ensure compliance with such Institutional Controls.

## IX.     FINANCIAL ASSURANCE

17.     In order to ensure completion of the Work, Settling Defendants shall secure financial assurance, initially in the amount of $852,200 ("Estimated Cost of the Work"), for the benefit of EPA. The financial assurance must be one or more of the mechanisms listed below, in a form substantially identical to the relevant sample documents available from EPA or under the "Financial Assurance - Settlements" category on the Cleanup Enforcement Model Language and Sample Documents Database at https://cfpub.epa.gov/compliance/models/, and satisfactory to EPA. Settling Defendants may use multiple mechanisms if they are limited to surety bonds guaranteeing payment, letters of credit, trust funds, and/or insurance policies.

a.     A surety bond guaranteeing payment and/or performance of the Work that is issued by a surety company among those listed as acceptable sureties on federal bonds as set forth in Circular 570 of the U.S. Department of the Treasury;

b.     An irrevocable letter of credit, payable to or at the direction of EPA, that is issued by an entity that has the authority to issue letters of credit and whose letter-of-credit operations are regulated and examined by a federal or state agency;

c.     A demonstration by a Settling Defendant that it meets the relevant test criteria of ¶ 18; or

d.     A guarantee to fund or perform the Work executed in favor of EPA by a company: (1) that is a direct or indirect parent company of a Settling Defendant or has a "substantial business relationship" (as defined in 40 C.F.R. § 264.141(h)) with a Settling Defendant; and (2) can demonstrate to EPA's satisfaction that it meets the financial test criteria of ¶ 18.

18.     Settling Defendants have selected, and EPA has found satisfactory, as an initial form of financial assurance mechanism a demonstration in accordance with ¶ 17.c that they meet

the relevant test criteria of ¶ 19. Settling Defendants shall update the "Estimated Cost of Work," as appropriate, in January 2023, and, in March 2023, shall secure all executed and/or otherwise finalized mechanisms or other documents consistent with the EPA-approved form of financial assurance and shall submit such mechanisms and documents to the Regional Financial Management Officer, to the United States, and to EPA as specified in Section XX (Notices and Submissions).

19.    Settling Defendants seeking to provide financial assurance by means of a demonstration or guarantee under ¶ 17.c or 17.d, must, within 30 days of the Effective Date:

      a.    Demonstrate that:

          (1)    the affected Settling Defendant or guarantor has:

              i.    Two of the following three ratios: a ratio of total liabilities to net worth less than 2.0; a ratio of the sum of net income plus depreciation, depletion, and amortization to total liabilities greater than 0.1; and a ratio of current assets to current liabilities greater than 1.5; and

              ii.    Net working capital and tangible net worth each at least six times the sum of the Estimated Cost of the Work and the amounts, if any, of other federal, state, or tribal environmental obligations financially assured through the use of a financial test or guarantee; and

              iii.    Tangible net worth of at least $10 million; and

              iv.    Assets located in the United States amounting to at least ninety (90) percent of total assets or at least six times the sum of the Estimated Cost of the Work and the amounts, if any, of other federal, state, or tribal environmental obligations financially assured through the use of a financial test or guarantee; or

          (2)    The affected Settling Defendant or guarantor has:

              i.    A current rating for its senior unsecured debt of AAA, AA, A, or BBB as issued by Standard and Poor's or Aaa, Aa, A or Baa as issued by Moody's; and

              ii.    Tangible net worth at least six times the sum of the Estimated Cost of the Work and the amounts, if any, of other federal, state, or tribal environmental obligations financially assured through the use of a financial test or guarantee; and

              iii.    Tangible net worth of at least $10 million; and

       iv.    Assets located in the United States amounting to at least 90 percent of total assets or at least six times the sum of the Estimated Cost of the Work and the amounts, if any, of other federal, state, or tribal environmental obligations financially assured through the use of a financial test or guarantee; and

    b.    Submit to EPA for the affected Settling Defendant or guarantor: (1) a copy of an independent certified public accountant's report of the entity's financial statements for the latest completed fiscal year, which must not express an adverse opinion or disclaimer of opinion; and (2) a letter from its chief financial officer and a report from an independent certified public accountant substantially identical to the sample letter and reports available from EPA or under the "Financial Assurance - Settlements" subject list category on the Cleanup Enforcement Model Language and Sample Documents Database at https://cfpub.epa.gov/compliance/models/.

    20.    Settling Defendants providing financial assurance by means of a demonstration or guarantee under ¶ 17.c or 17.d  must also:

    a.    Annually resubmit the documents described in ¶ 19.b within 90 days after the close of the affected Respondent's or guarantor's fiscal year;

    b.    Notify EPA within 30 days after the affected Respondent or guarantor determines that it no longer satisfies the relevant financial test criteria and requirements set forth in this Section; and

    c.    Provide to EPA, within 30 days of EPA's request, reports of the financial condition of the affected Respondent or guarantor in addition to those specified in ¶ 19.b; EPA may make such a request at any time based on a belief that the affected Respondent or guarantor may no longer meet the financial test requirements of this Section.

    21.    Settling Defendants shall diligently monitor the adequacy of the financial assurance. If any Settling Defendant becomes aware of any information indicating that the financial assurance provided under this Section is inadequate or otherwise no longer satisfies the requirements of this Section, such Settling Defendant shall notify EPA of such information within 7 days. If EPA determines that the financial assurance provided under this Section is inadequate or otherwise no longer satisfies the requirements of this Section, EPA will notify the affected Settling Defendant of such determination. Settling Defendants shall, within 30 days after notifying EPA or receiving notice from EPA under this Paragraph, secure and submit to EPA for approval a proposal for a revised or alternative financial assurance mechanism that satisfies the requirements of this Section. EPA may extend this deadline for such time as is reasonably necessary for the affected Settling Defendant, in the exercise of due diligence, to secure and submit to EPA a proposal for a revised or alternative financial assurance mechanism, not to exceed 30 days. Settling Defendants shall follow the procedures of ¶ 23 (Modification of Financial Assurance) in seeking approval of, and submitting documentation for, the revised or alternative financial assurance mechanism. Settling Defendants' inability to secure financial

assurance in accordance with this Section does not excuse performance of any other obligation under this Settlement.

22.    **Access to Financial Assurance**

a.    If EPA issues a notice of implementation of a Work Takeover under ¶ 59.b, then, in accordance with any applicable financial assurance, EPA is entitled to: (1) the performance of the Work; and/or (2) require that any funds guaranteed be paid in accordance with ¶ 22.d.

b.    If EPA is notified by the issuer of a financial assurance mechanism that it intends to cancel the mechanism, and the affected Settling Defendant fails to provide an alternative financial assurance mechanism in accordance with this Section at least 30 days prior to the cancellation date, the funds guaranteed under such mechanism must be paid prior to cancellation in accordance with ¶ 22.d.

c.    If, upon issuance of a notice of implementation of a Work Takeover under ¶ 59.b, either: (1) EPA is unable for any reason to promptly secure the resources guaranteed under any applicable financial assurance, whether in cash or in kind, to continue and complete the Work; or (2) the financial assurance is a demonstration or guarantee under ¶ 17.c or 17.d, then EPA is entitled to demand an amount, as determined by EPA, sufficient to cover the cost of the remaining Work to be performed. Settling Defendants shall, within 14 days of such demand, pay the amount demanded as directed by EPA.

d.    Any amounts required to be paid under this ¶ 22 shall be, as directed by EPA: (i) paid to EPA in order to facilitate the completion of the Work by EPA or by another person; or (ii) deposited into an interest-bearing account, established at a duly chartered bank or trust company that is insured by the FDIC, in order to facilitate the completion of the Work by another person. If payment is made to EPA, EPA may deposit the payment into the EPA Hazardous Substance Superfund or into the East Helena Special Account within the EPA Hazardous Substance Superfund to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

e.    All EPA Work Takeover costs not paid under this ¶ 22 must be reimbursed as Future Response Costs under Section X (Payments for Future Response Costs).

23.    **Modification of Amount, Form, or Terms of Financial Assurance**. Settling Defendants may submit, on any anniversary of the Effective Date or at any other time agreed to by the Parties, a request to reduce the amount, or change the form or terms, of the financial assurance mechanism. Any such request must be submitted to EPA in accordance with ¶ 18, and must include an estimate of the cost of the remaining Work, an explanation of the bases for the cost calculation, and a description of the proposed changes, if any, to the form or terms of the financial assurance. EPA will notify Settling Defendants of its decision to approve or disapprove a requested reduction or change pursuant to this Paragraph. Settling Defendants may reduce the amount of the financial assurance mechanism only in accordance with: (a) EPA's approval; or (b) if there is a dispute, the agreement, final administrative decision, or final judicial decision

resolving such dispute under Section XIII (Dispute Resolution). Settling Defendants may change the form or terms of the financial assurance mechanism only in accordance with EPA's approval. Any decision made by EPA on a request submitted under this Paragraph to change the form or terms of a financial assurance mechanism shall not be subject to challenge by Settling Defendants pursuant to the dispute resolution provisions of this Consent Decree or in any other forum. Within 30 days after receipt of EPA's approval of, or the agreement or decision resolving a dispute relating to, the requested modifications pursuant to this Paragraph, Settling Defendants shall submit to EPA documentation of the reduced, revised, or alternative financial assurance mechanism in accordance with ¶ 18.

24.     **Release, Cancellation, or Discontinuation of Financial Assurance**. Settling Defendants may release, cancel, or discontinue any financial assurance provided under this Section only: (a) if EPA issues a Certification of Remedial Action Completion under ¶ 2.6 (Certification of Remedial Action Completion) of the SOW; (b) in accordance with EPA's approval of such release, cancellation, or discontinuation; or (c) if there is a dispute regarding the release, cancellation or discontinuance of any financial assurance, in accordance with the agreement, final administrative decision, or final judicial decision resolving such dispute under Section XIII (Dispute Resolution).

## X.     PAYMENTS FOR FUTURE RESPONSE COSTS

25.     **Payments by Settling Defendants for Future Response Costs**. Settling Defendants shall pay to EPA all Future Response Costs not inconsistent with the NCP.

a.     **Periodic Bills**. On a periodic basis, EPA will send Settling Defendants an electronic billing notification to the following email addresses:

Charles.Thomas@BNSF.com and hmattson@mtrail.com.

The billing notification will include a standard EPA cost report, which includes direct and indirect costs incurred by EPA, its contractors, subcontractors, and DOJ. Settling Defendants shall make all payments within 30 days after Settling Defendants' receipt of each bill requiring payment, except as otherwise provided in ¶ 27, in accordance with ¶ 26.a (instructions for future response cost payments).

If the electronic billing notification is undeliverable, EPA will mail a paper copy of the billing notification to Settling Defendants to:

Charles Thomas
Director, Environmental Remediation
BNSF Railway Company
2500 Lou Menk Drive, AOB-3
Fort Worth, TX  76131

and

Montana Rail Link, Inc.
Attn: Heather Mattson, Vice President, Finance and Accounting
101 International Drive
Missoula, MT  59808.

b.      Settling Defendants may change their email addresses by providing notice of the new address to:

Financial Management Officer
U.S. EPA, Region 8 (MSD-FM-B)
1595 Wynkoop Street
Denver, Colorado 80202

c.      **Deposit of Future Response Costs Payments**. The total amount to be paid by Settling Defendants pursuant to ¶ 25.a (Periodic Bills) shall be deposited by EPA in the East Helena Special Account to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA, in its sole discretion, to the EPA Hazardous Substance Superfund.

26.      **Payment Instructions for Settling Defendants**

a.      **Future Response Costs Payments and Stipulated Penalties Payment Instructions**. For all payments subject to this ¶ 26.a, Settling Defendants shall make such payment in accordance with instructions provided in periodic bills from EPA.

b.      **Notice of Payment**. At the time of any payment requirement to be made in accordance with ¶ 26, Settling Defendants shall send notices (in accordance with Section XX) that payment has been made to the United States, EPA, and the EPA Cincinnati Finance Center, all in accordance with ¶ 81. All notices must include references to the Site/Spill ID No. 0830 and DJ No. 90-11-3-08633/7.

27.      **Contesting Future Response Costs**. Settling Defendants may submit a Notice of Dispute, initiating the procedures of Section XIII (Dispute Resolution), regarding any Future Response Costs billed under ¶ 25 (Payments by Settling Defendants for Future Response Costs) if they determine that EPA has made a mathematical error or included a cost item that is not within the definition of Future Response Costs, or if they believe EPA incurred excess costs as a direct result of an EPA action that was inconsistent with a specific provision or provisions of the NCP. Such Notice of Dispute shall be submitted in writing within 30 days after receipt of the bill and must be sent to the United States pursuant to Section XX (Notices and Submissions). Such Notice of Dispute shall specifically identify the contested Future Response Costs and the basis for objection. If Settling Defendants submit a Notice of Dispute, Settling Defendants shall within the 30-day period, also as a requirement for initiating the dispute, (a) pay all uncontested Future Response Costs to the United States, and (b) establish, in a duly chartered bank or trust company, an interest-bearing escrow account that is insured by the Federal Deposit Insurance Corporation (FDIC), and remit to that escrow account funds equivalent to the amount of the contested Future Response Costs. Settling Defendants shall send to the United States, as provided in Section XX

16

(Notices and Submissions), a copy of the transmittal letter and check paying the uncontested Future Response Costs, and a copy of the correspondence that establishes and funds the escrow account, including, but not limited to, information containing the identity of the bank and bank account under which the escrow account is established as well as a bank statement showing the initial balance of the escrow account. If the United States prevails in the dispute, Settling Defendants shall pay the sums due (with accrued interest) to the United States within 7 days after the resolution of the dispute. If Settling Defendants prevail concerning any aspect of the contested costs, Settling Defendants shall pay that portion of the costs (plus associated accrued interest) for which they did not prevail to the United States within 7 days after the resolution of the dispute. Settling Defendants shall be disbursed any balance of the escrow account. All payments to the United States under this Paragraph shall be made in accordance with ¶¶ 26.a (instructions for future response cost payments). The dispute resolution procedures set forth in this Paragraph in conjunction with the procedures set forth in Section XIII (Dispute Resolution) shall be the exclusive mechanisms for resolving disputes regarding Settling Defendants' obligation to reimburse the United States for its Future Response Costs.

28.    **Interest**. In the event that any payment for Future Response Costs required under this Section is not made by the date required, Settling Defendants shall pay Interest on the unpaid balance. The Interest on Future Response Costs shall begin to accrue on the date of the bill. The Interest shall accrue through the date of Settling Defendants' payment. Payments of Interest made under this Paragraph shall be in addition to such other remedies or sanctions available to Plaintiff by virtue of Settling Defendants' failure to make timely payments under this Section including, but not limited to, payment of stipulated penalties pursuant to Section XIV (Stipulated Penalties).

## XI.    INDEMNIFICATION AND INSURANCE

29.    **Settling Defendants' Indemnification of the United States**

a.    The United States does not assume any liability by entering into this Consent Decree or by virtue of any designation of Settling Defendants as EPA's authorized representatives under Section 104(e) of CERCLA, 42 U.S.C. § 9604(e). Settling Defendants shall indemnify, save, and hold harmless the United States and its officials, agents, employees, contractors, subcontractors, and representatives for or from any and all claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of Settling Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on Settling Defendants' behalf or under their control, in carrying out activities pursuant to this Consent Decree, including, but not limited to, any claims arising from any designation of Settling Defendants as EPA's authorized representatives under Section 104(e) of CERCLA. Further, Settling Defendants agree to pay the United States all costs it incurs including, but not limited to, attorneys' fees and other expenses of litigation and settlement arising from, or on account of, claims made against the United States based on negligent or other wrongful acts or omissions of Settling Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree. The United States shall not be held out as

a party to any contract entered into by or on behalf of Settling Defendants in carrying out activities pursuant to this Consent Decree. Neither Settling Defendants nor any such contractor shall be considered an agent of the United States.

> b.     The United States shall give Settling Defendants notice of any claim for which the United States plans to seek indemnification pursuant to this ¶ 29, and shall consult with Settling Defendants prior to settling such claim.

30.     Settling Defendants covenant not to sue and agree not to assert any claims or causes of action against the United States for damages or reimbursement or for set-off of any payments made or to be made to the United States, arising from or on account of any contract, agreement, or arrangement between any one or more of Settling Defendants and any person for performance of work on or relating to the Site, including, but not limited to, claims on account of construction delays. In addition, Settling Defendants shall indemnify, save and hold harmless the United States with respect to any and all claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between any one or more of Settling Defendants and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays.

31.     **Insurance**. No later than 15 days before commencing any on-site Work, Settling Defendants shall secure and maintain, or shall ensure that their contractors or subcontractors secure maintain, until the first anniversary after issuance of EPA's Certification of RA Completion pursuant to ¶ 2.6 (Certification of Remedial Action Completion) of the SOW, commercial general liability insurance with limits of liability of $1 million per occurrence, automobile liability insurance with limits of liability of $1 million per accident, and umbrella liability insurance with limits of liability of $5 million in excess of the required commercial general liability and automobile liability limits, naming the United States as an additional insured with respect to all liability arising out of the activities performed by or on behalf of Settling Defendants pursuant to this Consent Decree. In addition, for the duration of this Consent Decree, Settling Defendants shall satisfy, or shall ensure that their contractors or subcontractors satisfy, all applicable laws and regulations regarding the provision of worker's compensation insurance for all persons performing the Work on behalf of Settling Defendants in furtherance of this Consent Decree. Prior to commencement of the Work, Settling Defendants shall provide to EPA certificates of such insurance and a copy of each insurance policy. Settling Defendants shall resubmit such certificates and copies of policies each year on the anniversary of the Effective Date. If Settling Defendants demonstrate by evidence satisfactory to EPA that any contractor or subcontractor maintains insurance equivalent to that described above, or insurance covering the same risks but in a lesser amount, then, with respect to that contractor or subcontractor, Settling Defendants need provide only that portion of the insurance described above that is not maintained by the contractor or subcontractor. Settling Defendants shall ensure that all submittals to EPA under this Paragraph identify the East Helena Superfund Site, in East Helena, Montana and the civil action number of this case.

## XII.   FORCE MAJEURE

32.      "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Settling Defendants, of any entity controlled by Settling Defendants, or of Settling Defendants' contractors that delays or prevents the performance of any obligation under this Consent Decree despite Settling Defendants' best efforts to fulfill the obligation. The requirement that Settling Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure and best efforts to address the effects of any potential force majeure (a) as it is occurring and (b) following the potential force majeure such that the delay and any adverse effects of the delay are minimized to the greatest extent possible. "Force majeure" does not include financial inability to complete the Work or a failure to achieve the Performance Standards.

33.      If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree for which Settling Defendants intend or may intend to assert a claim of force majeure, Settling Defendants shall notify EPA's Project Coordinator orally or, in his or her absence, the Division Director of the Superfund and Emergency Management Division, EPA Region 8, within 7 days of when Settling Defendants first knew that the event might cause a delay. Within 7 days thereafter, Settling Defendants shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Settling Defendants' rationale for attributing such delay to a force majeure; and a statement as to whether, in the opinion of Settling Defendants, such event may cause or contribute to an endangerment to public health or welfare, or the environment. Settling Defendants shall include with any notice all available documentation supporting their claim that the delay was attributable to a force majeure. Settling Defendants shall be deemed to know of any circumstance of which Settling Defendants, any entity controlled by Settling Defendants, or Settling Defendants' contractors or subcontractors knew or should have known. Failure to comply with the above requirements regarding an event shall preclude Settling Defendants from asserting any claim of force majeure regarding that event, provided, however, that if EPA, despite the late or incomplete notice, is able to assess to its satisfaction whether the event is a force majeure under ¶ 32 and whether Settling Defendants have exercised their best efforts under ¶ 32, EPA may, in its unreviewable discretion, excuse in writing Settling Defendants' failure to submit timely or complete notices under this Paragraph.

34.      If EPA agrees that the delay or anticipated delay is attributable to a force majeure, the time for performance of the obligations under this Consent Decree that are affected by the force majeure will be extended by EPA for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure shall not, of itself, extend the time for performance of any other obligation. If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure, EPA will notify Settling Defendants in writing of its decision. If EPA agrees that the delay is attributable to a force majeure, EPA will notify Settling Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure.

35.     If Settling Defendants elect to invoke the dispute resolution procedures set forth in Section XIII (Dispute Resolution) regarding EPA's decision, they shall do so no later than 15 days after receipt of EPA's notice. In any such proceeding, Settling Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Settling Defendants complied with the requirements of ¶¶ 32 and 33. If Settling Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Settling Defendants of the affected obligation of this Consent Decree identified to EPA and the Court.

36.     The failure by EPA to timely complete any obligation under the Consent Decree or under the SOW is not a violation of the Consent Decree, provided, however, that if such failure prevents Settling Defendants from meeting one or more deadlines in the SOW, Settling Defendants may seek relief under this Section.

## XIII.  DISPUTE RESOLUTION

37.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes under this Consent Decree. However, the procedures set forth in this Section shall not apply to actions by the United States to enforce obligations of Settling Defendants that have not been disputed in accordance with this Section.

38.     A dispute shall be considered to have arisen when one party sends the other parties a written Notice of Dispute. Any dispute regarding this Consent Decree shall in the first instance be the subject of informal negotiations between the parties to the dispute. The period for informal negotiations shall not exceed 20 days from the time the dispute arises, unless it is modified by written agreement of the parties to the dispute.

39.     **Statements of Position**

        a.      In the event that the parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by EPA shall be considered binding unless, within 5 days after the conclusion of the informal negotiation period, Settling Defendants invoke the formal dispute resolution procedures of this Section by serving on the United States a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by Settling Defendants. The Statement of Position shall specify Settling Defendants' position as to whether formal dispute resolution should proceed under ¶ 40 (Record Review) or 41.

        b.      Within 20 days after receipt of Settling Defendants' Statement of Position, EPA will serve on Settling Defendants its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by EPA. EPA's Statement of Position shall include a statement as to whether formal

dispute resolution should proceed under ¶ 40 (Record Review) or 41. Within 20 days after receipt of EPA's Statement of Position, Settling Defendants may submit a Reply.

c.       If there is disagreement between EPA and Settling Defendants as to whether dispute resolution should proceed under ¶ 40 (Record Review) or 41, the parties to the dispute shall follow the procedures set forth in the Paragraph determined by EPA to be applicable. However, if Settling Defendants ultimately appeal to the Court to resolve the dispute, the Court shall determine which Paragraph is applicable in accordance with the standards of applicability set forth in ¶¶ 40 and 41.

40.     **Record Review**. Formal dispute resolution for disputes pertaining to the selection or adequacy of any response action and all other disputes that are accorded review on the administrative record under applicable principles of administrative law shall be conducted pursuant to the procedures set forth in this Paragraph. For purposes of this Paragraph, the adequacy of any response action includes, without limitation, the adequacy or appropriateness of plans, procedures to implement plans, or any other items requiring approval by EPA under this Consent Decree, and the adequacy of the performance of response actions taken pursuant to this Consent Decree. Settling Defendants shall not challenge, using the dispute resolution procedures under Section XIV, or judicially, EPA's remedial action selection embodied in the ROD.

a.       An administrative record of the dispute shall be maintained by EPA and shall contain all statements of position, including supporting documentation, submitted pursuant to this Section. Where appropriate, EPA may allow submission of supplemental statements of position by the parties to the dispute.

b.       The Division Director of the Superfund and Emergency Management Division, EPA Region 8, will issue a final administrative decision resolving the dispute based on the administrative record described in ¶ 40.a. This decision shall be binding upon Settling Defendants, subject only to the right to seek judicial review pursuant to ¶¶ 40.c and 40.d.

c.       Any administrative decision made by EPA pursuant to ¶ 40.b shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by Settling Defendants with the Court and served on all Parties within 10 days after receipt of EPA's decision. The motion shall include a description of the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree. The United States may file a response to Settling Defendants' motion.

d.       In proceedings on any dispute governed by this Paragraph, Settling Defendants shall have the burden of demonstrating that the decision of the Superfund and Emergency Management Division Director is arbitrary and capricious or otherwise not in accordance with law. Judicial review of EPA's decision shall be on the administrative record compiled pursuant to ¶ 40.a.

41.     Formal dispute resolution for disputes that neither pertain to the selection or adequacy of any response action nor are otherwise accorded review on the administrative record under applicable principles of administrative law, shall be governed by this Paragraph.

a.      The Division Director of the Superfund and Emergency Management Division, EPA Region 8, will issue a final decision resolving the dispute based on the statements of position and reply, if any, served under ¶ 39. The Superfund and Emergency Management Division Director's decision shall be binding on Settling Defendants unless, within 10 days after receipt of the decision, Settling Defendants file with the Court and serve on the parties a motion for judicial review of the decision setting forth the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the Consent Decree. The United States may file a response to Settling Defendants' motion.

b.      Notwithstanding ¶ M (CERCLA § 113(j) record review of ROD and Work) of Section I (Background), judicial review of any dispute governed by this Paragraph shall be governed by applicable principles of law.

42.      The invocation of formal dispute resolution procedures under this Section does not extend, postpone, or affect in any way any obligation of Settling Defendants under this Consent Decree, except as provided in ¶ 27 (Contesting Future Response Costs), as agreed by EPA, or as determined by the Court. Stipulated penalties with respect to the disputed matter shall continue to accrue, but payment shall be stayed pending resolution of the dispute, as provided in ¶ 49. Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this Consent Decree. In the event that Settling Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XIV (Stipulated Penalties).

## XIV.  STIPULATED PENALTIES

43.      Settling Defendants shall be liable to the United States for stipulated penalties in the amounts set forth in ¶¶ 44.a for failure to comply with the obligations specified in ¶¶ 44.b, unless excused under Section XII (Force Majeure). "Comply" as used in the previous sentence includes compliance by Settling Defendants with all applicable requirements of this Consent Decree, within the deadlines established under this Consent Decree. If an initially submitted or resubmitted deliverable contains a material defect, and the deliverable is disapproved or modified by EPA under ¶ 3.4(a) (Initial Submissions) or 3.4(b) (Resubmissions) of the SOW due to such material defect, then the material defect shall constitute a lack of compliance for purposes of this Paragraph.

44.   **Stipulated Penalty Amounts - Payments, Financial Assurance, Major Deliverables, and Other Milestones**

a.      The following stipulated penalties shall accrue per violation per day for any noncompliance identified in ¶ 44.b:

| Period of Noncompliance | Penalty Per Violation Per Day |
|---|---|
| 1st through 14th day | $1,000 |
| 15th through 30th day | $1,300 |
| 31st day and beyond | $3,000 |

b.   **Obligations**

(1)     Payment of any amount due under Section X (Payments for Future Response Costs).

(2)     Establishment and maintenance of financial assurance in accordance with Section IX (Financial Assurance).

(3)     Establishment of an escrow account to hold any disputed Future Response Costs under ¶ 27 (Contesting Future Response Costs).

(4)     Failure to timely submit adequate Remedial Action Work Plan.

(5)     Failure to timely submit adequate Remedial Action Report.

(6)     Failure to timely submit adequate O&M Plan.

45.      In the event that EPA assumes performance of a portion or all of the Work pursuant to ¶ 59 (Work Takeover), Settling Defendants shall be liable for a stipulated penalty in the amount of $75,000. Stipulated penalties under this Paragraph are in addition to the remedies available under ¶¶ 22 (Access to Financial Assurance) and 59 (Work Takeover).

46.      All penalties shall begin to accrue on the day after the complete performance is due or the day a violation occurs and shall continue to accrue through the final day of the correction of the noncompliance or completion of the activity. However, stipulated penalties shall not accrue: (a) with respect to a deficient submission under ¶ 3.4 (Approval of Deliverables) of the SOW, during the period, if any, beginning on the 31st day after EPA's receipt of such submission until the date that EPA notifies Settling Defendants of any deficiency; (b) with respect to a decision by the Division Director of the Superfund and Emergency Management Division, EPA Region 8, under ¶ 40.b or 41.a of Section XIII (Dispute Resolution), during the period, if any, beginning on the 21st day after the date that Settling Defendants' reply to EPA's Statement of Position is received until the date that the Division Director issues a final decision regarding such dispute; or (c) with respect to judicial review by this Court of any dispute under Section XIII (Dispute Resolution), during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute. Nothing in this Consent Decree shall

prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

47.     Following EPA's determination that Settling Defendants have failed to comply with a requirement of this Consent Decree, EPA may give Settling Defendants written notification of the same and describe the noncompliance. EPA may send Settling Defendants a written demand for payment of the penalties. However, penalties shall accrue as provided in the preceding Paragraph regardless of whether EPA has notified Settling Defendants of a violation.

48.     All penalties accruing under this Section shall be due and payable to the United States within 30 days after Settling Defendants' receipt from EPA of a demand for payment of the penalties, unless Settling Defendants invoke the Dispute Resolution procedures under Section XIII (Dispute Resolution) within the 30-day period. All payments to the United States under this Section shall indicate that the payment is for stipulated penalties and shall be made in accordance with ¶ 26.a (instructions for future response cost payments).

49.     Penalties shall continue to accrue as provided in ¶ 46 during any dispute resolution period, but need not be paid until the following:

          a.     If the dispute is resolved by agreement of the parties or by a decision of EPA that is not appealed to this Court, accrued penalties determined to be owed shall be paid to EPA within 15 days after the agreement or the receipt of EPA's decision or order;

          b.     If the dispute is appealed to this Court and the United States prevails in whole or in part, Settling Defendants shall pay all accrued penalties determined by the Court to be owed to EPA within 60 days after receipt of the Court's decision or order, except as provided in ¶ 49.c;

          c.     If the District Court's decision is appealed by any Party, Settling Defendants shall pay all accrued penalties determined by the District Court to be owed to the United States into an interest-bearing escrow account, established at a duly chartered bank or trust company that is insured by the FDIC, within 60 days after receipt of the Court's decision or order. Penalties shall be paid into this account as they continue to accrue, at least every 60 days. Within 15 days after receipt of the final appellate court decision, the escrow agent shall pay the balance of the account to EPA or to Settling Defendants to the extent that they prevail.

50.     If Settling Defendants fail to pay stipulated penalties when due, Settling Defendants shall pay Interest on the unpaid stipulated penalties as follows: (a) if Settling Defendants have timely invoked dispute resolution such that the obligation to pay stipulated penalties has been stayed pending the outcome of dispute resolution, Interest shall accrue from the date stipulated penalties are due pursuant to ¶ 49 until the date of payment; and (b) if Settling Defendants fail to timely invoke dispute resolution, Interest shall accrue from the date of demand under ¶ 48 until the date of payment. If Settling Defendants fail to pay stipulated penalties and Interest when due, the United States may institute proceedings to collect the penalties and Interest.

51.     The payment of penalties and Interest, if any, shall not alter in any way Settling Defendants' obligation to complete the performance of the Work required under this Consent Decree.

52.     Nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the United States to seek any other remedies or sanctions available by virtue of Settling Defendants' violation of this Consent Decree or of the statutes and regulations upon which it is based, including, but not limited to, penalties pursuant to Section 122(*l*) of CERCLA, 42 U.S.C. § 9622(*l*), provided, however, that the United States shall not seek civil penalties pursuant to Section 122(*l*) of CERCLA for any violation for which a stipulated penalty is provided in this Consent Decree, except in the case of a willful violation of this Consent Decree.

53.     Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued pursuant to this Consent Decree.

## XV.   COVENANTS BY PLAINTIFF

54.     **Covenants for Settling Defendants by United States**

Except as provided in ¶ 58 (General Reservations of Rights), the United States covenants not to sue or to take administrative action against Settling Defendants pursuant to Sections 106 and 107(a) of CERCLA for the Work and Future Response Costs. These covenants shall take effect upon the Effective Date. These covenants are conditioned upon the satisfactory performance by Settling Defendants of their obligations under this CD. These covenants extend only to Settling Defendants and do not extend to any other person.

55.     **United States' Pre-Certification Reservations**. Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, and/or to issue an administrative order, seeking to compel Settling Defendants to perform further response actions relating to the Site and/or to pay the United States for additional costs of response if, (a) prior to Certification of Remedial Action Completion, (1) conditions at the Site, previously unknown to EPA, are discovered, or (2) information, previously unknown to EPA, is received, in whole or in part, and (b) EPA determines that these previously unknown conditions or information together with any other relevant information indicates that the Remedial Action is not protective of human health or the environment.

56.     **United States' Post-Certification Reservations**. Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, and/or to issue an administrative order, seeking to compel Settling Defendants to perform further response actions relating to the Site and/or to pay the United States for additional costs of response if, (a) subsequent to Certification of Remedial Action Completion, (1) conditions at the Site, previously unknown to EPA, are discovered, or (2) information, previously unknown to EPA, is received, in whole or in part, and (b) EPA determines that these previously unknown conditions

25

or this information together with other relevant information indicate that the Remedial Action is not protective of human health or the environment.

57.     For purposes of ¶ 55 (United States' Pre-Certification Reservations), the information and the conditions known to EPA will include only that information and those conditions known to EPA as of the date the ROD was signed and set forth in the ROD for the Site and the administrative record supporting the ROD. For purposes of ¶ 56 (United States' Post-Certification Reservations), the information and the conditions known to EPA shall include only that information and those conditions known to EPA as of the date of Certification of Remedial Action Completion and set forth in the ROD, the administrative record supporting the ROD, the post-ROD administrative record, or in any information received by EPA pursuant to the requirements of this Consent Decree prior to Certification of Remedial Action Completion.

58.     **General Reservations of Rights**. The United States reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendants with respect to all matters not expressly included within Plaintiff's covenants. Notwithstanding any other provision of this Consent Decree, the United States reserves all rights against Settling Defendants with respect to:

a.     liability for failure by Settling Defendants to meet a requirement of this Consent Decree;

b.     liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of the Site;

c.     liability based on the ownership of the Site by Settling Defendants when such ownership commences after signature of this Consent Decree by Settling Defendants;

d.      liability based on the operation of the Site by Settling Defendants when such operation commences after signature of this Consent Decree by Settling Defendants and does not arise solely from Settling Defendants' performance of the Work;

e.     liability based on Settling Defendants' transportation, treatment, storage, or disposal, or arrangement for transportation, treatment, storage, or disposal of Waste Material at or in connection with the Site, other than as provided in the ROD, the Work, or otherwise ordered by EPA, after signature of this Consent Decree by Settling Defendants;

f.     liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

g.     criminal liability;

h.     liability for violations of federal or state law that occur during or after implementation of the Work;

i.     liability, prior to achievement of Performance Standards, for additional response actions that EPA determines are necessary to achieve and maintain Performance Standards or to carry out and maintain the effectiveness of the remedy set forth in the ROD, but that cannot be required pursuant to ¶ 12 (Modification of SOW or Related Deliverables).

j.      liability for additional OUs at the Site or the final response action; and

k.      liability for costs that the United States will incur regarding the Site but that are not within the definition of Future Response Costs.

59.     **Work Takeover**

a.      In the event EPA determines that Settling Defendants: (1) have ceased implementation of any portion of the Work; (2) are seriously or repeatedly deficient or late in their performance of the Work; or (3) are implementing the Work in a manner that may cause an endangerment to human health or the environment, EPA may issue a written notice ("Work Takeover Notice") to Settling Defendants. Any Work Takeover Notice issued by EPA will specify the grounds upon which such notice was issued and will provide Settling Defendants a period of ten (10) days within which to remedy the circumstances giving rise to EPA's issuance of such notice.

b.      If, after expiration of the 10-day notice period specified in ¶ 59.a, Settling Defendants have not remedied to EPA's satisfaction the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice, EPA may at any time thereafter assume the performance of all or any portion(s) of the Work as EPA deems necessary ("Work Takeover"). EPA will notify Settling Defendants in writing (which writing may be electronic) if EPA determines that implementation of a Work Takeover is warranted under this ¶ 59.b. Funding of Work Takeover costs is addressed under ¶ 22 (Access to Financial Assurance).

c.      Settling Defendants may invoke the procedures set forth in ¶ 40 (Record Review), to dispute EPA's implementation of a Work Takeover under ¶ 59.b. However, notwithstanding Settling Defendants' invocation of such dispute resolution procedures, and during the pendency of any such dispute, EPA may in its sole discretion commence and continue a Work Takeover under ¶ 59.b until the earlier of (1) the date that Settling Defendants remedy, to EPA's satisfaction, the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice, or (2) the date that a final decision is rendered in accordance with ¶ 40 (Record Review) requiring EPA to terminate such Work Takeover.

60.     Notwithstanding any other provision of this Consent Decree, the United States retains all authority and reserves all rights to take any and all response actions authorized by law.

## XVI.  COVENANTS BY SETTLING DEFENDANTS

61.     **Covenants by Settling Defendants**. Subject to the reservations in ¶ 63, Settling Defendants covenant not to sue and agree not to assert any claims or causes of action against the United States with respect to the Work, past response actions regarding the Site, Future Response Costs, and this Consent Decree, including, but not limited to:

a.      any direct or indirect claim for reimbursement from the EPA Hazardous Substance Superfund through CERCLA §§ 106(b)(2), 107, 111, 112 or 113, or any other provision of law;

b.      any claims under CERCLA §§ 107 or 113, RCRA Section 7002(a), 42 U.S.C. § 6972(a), or state law regarding the Work, past response actions regarding the Site, Future Response Costs, and this Consent Decree; or

c.      any claims arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the Montana Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, or at common law.

62.      Except as provided in ¶¶ 66 (Waiver of Claims by Settling Defendants) and 72 (Res Judicata and Other Defenses), the covenants in this Section shall not apply if the United States brings a cause of action or issues an order pursuant to any of the reservations in Section XV (Covenants by Plaintiff), other than in ¶¶ 58.a (claims for failure to meet a requirement of the Consent Decree), 58.g (criminal liability), and 58.h (violations of federal/state law during or after implementation of the Work), but only to the extent that Settling Defendants' claims arise from the same response action, response costs, or damages that the United States is seeking pursuant to the applicable reservation.

63.      Settling Defendants reserve, and this Consent Decree is without prejudice to, claims against the United States, subject to the provisions of Chapter 171 of Title 28 of the United States Code, and brought pursuant to any statute other than CERCLA and for which the waiver of sovereign immunity is found in a statute other than CERCLA, for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States, as that term is defined in 28 U.S.C. § 2671, while acting within the scope of his or her office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. However, the foregoing shall not include any claim based on EPA's selection of response actions, or the oversight or approval of Settling Defendants' deliverables or activities.

64.      Settling Defendants aver that each is a common carrier by rail and the Railyard Property is an integral part of the interstate commerce system. Settling Defendants do not waive preemption under the Interstate Commerce Commission Termination Act of 1995, 49 U.S.C. § 10501(b), or other applicable federal law, to the extent that Plaintiff seeks to take action or require action on the Railyard Property that impacts either Settling Defendant's common carrier obligations.

65.      Nothing in this Consent Decree shall be deemed to constitute approval or preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

66.      **Waiver of Claims by Settling Defendants**

a.      Settling Defendants agree not to assert any claims and to waive all claims or causes of action (including but not limited to claims or causes of action under Sections 107(a) and 113 of CERCLA) that they may have:

28

(1)    **De Micromis Waiver**. For all matters relating to the Site against any person where the person's liability to Settling Defendants with respect to the Site is based solely on having arranged for disposal or treatment, or for transport for disposal or treatment, of hazardous substances at the Site, or having accepted for transport for disposal or treatment of hazardous substances at the Site, if all or part of the disposal, treatment, or transport occurred before April 1, 2001, and the total amount of material containing hazardous substances contributed by such person to the Site was less than 110 gallons of liquid materials or 200 pounds of solid materials;

## XVII. EFFECT OF SETTLEMENT; CONTRIBUTION

67.    Except as provided in ¶ 66 (Waiver of Claims by Settling Defendants), nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree. Except as provided in Section XVI (Covenants by Settling Defendants), each of the Parties expressly reserves any and all rights (including, but not limited to, pursuant to Section 113 of CERCLA, 42 U.S.C. § 9613), defenses, claims, demands, and causes of action that each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto. Nothing in this Consent Decree diminishes the right of the United States, pursuant to Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. § 9613(f)(2)-(3), to pursue any such persons to obtain additional response costs or response action and to enter into settlements that give rise to contribution protection pursuant to Section 113(f)(2).

68.    The Parties agree, and by entering this Consent Decree this Court finds, that this Consent Decree constitutes a judicially-approved settlement pursuant to which each Settling Defendant has, as of the Effective Date, resolved liability to the United States within the meaning of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and is entitled, as of the Effective Date, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, or as may be otherwise provided by law, for the "matters addressed" in this Consent Decree. The "matters addressed" in this Consent Decree are the Work and Future Response Costs.

69.    The Parties further agree, and by entering this Consent Decree this Court finds, that the complaint filed by the United States in this action is a civil action within the meaning of Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), and that this Consent Decree constitutes a judicially-approved settlement pursuant to which each Settling Defendant has, as of the Effective Date, resolved liability to the United States within the meaning of Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B).

70.    Each Settling Defendant shall, with respect to any suit or claim brought by it for matters related to this Consent Decree, notify the United States in writing no later than 60 days prior to the initiation of such suit or claim.

71.    Each Settling Defendant shall, with respect to any suit or claim brought against it for matters related to this Consent Decree, notify in writing the United States within 10 days

29

after service of the complaint on such Settling Defendant. In addition, each Settling Defendant shall notify the United States within 10 days after service or receipt of any Motion for Summary Judgment and within 10 days after receipt of any order from a court setting a case for trial.

72.     **Res Judicata and Other Defenses**. In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of response costs, or other appropriate relief relating to the Site, Settling Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Section XV (Covenants by Plaintiff).

# XVIII.     ACCESS TO INFORMATION

73.     Settling Defendants shall provide to EPA, upon request, copies of all records, reports, documents, and other information (including records, reports, documents, and other information in electronic form) (hereinafter referred to as "Records") within Settling Defendants' possession or control or that of their contractors or agents relating to activities at the Site or to the implementation of this Consent Decree, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information regarding the Work. Settling Defendants shall also make available to EPA, for purposes of investigation, information gathering, or testimony, their employees, agents, or representatives with knowledge of relevant facts concerning the performance of the Work.

74.     **Privileged and Protected Claims**

a.     Settling Defendants may assert that all or part of a Record requested by Plaintiff is privileged or protected as provided under federal law, in lieu of providing the Record, provided Settling Defendants comply with ¶ 74.b, and except as provided in ¶ 74.c.

b.     If Settling Defendants assert a claim of privilege or protection, they shall provide Plaintiff with the following information regarding such Record: its title; its date; the name, title, affiliation (e.g., company or firm), and address of the author, of each addressee, and of each recipient; a description of the Record's contents; and the privilege or protection asserted. If a claim of privilege or protection applies only to a portion of a Record, Settling Defendants shall provide the Record to Plaintiff in redacted form to mask the privileged or protected portion only. Settling Defendants shall retain all Records that they claim to be privileged or protected until Plaintiff has had a reasonable opportunity to dispute the privilege or protection claim and any such dispute has been resolved in the Settling Defendants' favor.

c.     Settling Defendants may make no claim of privilege or protection regarding: (1) any data regarding the Site, including, but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, radiological or engineering data, or the portion of any other Record that evidences conditions at or around the Site; or (2) the portion of any

Record that Settling Defendants are required to create or generate pursuant to this Consent Decree.

75.     **Business Confidential Claims**. Settling Defendants may assert that all or part of a Record provided to Plaintiff under this Section or Section XIX (Retention of Records) is business confidential to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b). Settling Defendants shall segregate and clearly identify all Records or parts thereof submitted under this Consent Decree for which Settling Defendants assert business confidentiality claims. Records that Settling Defendants claim to be confidential business information will be afforded the protection specified in 40 C.F.R. Part 2, Subpart B. If no claim of confidentiality accompanies Records when they are submitted to EPA, or if EPA has notified Settling Defendants that the Records are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart B, the public may be given access to such Records without further notice to Settling Defendants.

76.     If relevant to the proceeding, the Parties agree that validated sampling or monitoring data generated in accordance with the SOW and reviewed and approved by EPA shall be admissible as evidence, without objection, in any proceeding under this Consent Decree.

77.     Notwithstanding any provision of this Consent Decree, Plaintiff retains all of its information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA, and any other applicable statutes or regulations.

## XIX.   RETENTION OF RECORDS

78.     Until 10 years after EPA's Certification of Remedial Action Completion under ¶ 4.6 (Certification of Remedial Action Completion) of the SOW, each Settling Defendant shall preserve and retain all non-identical copies of Records (including Records in electronic form) now in its possession or control or that come into its possession or control that relate in any manner to its liability under CERCLA with respect to the Site, provided, however, that Settling Defendants who are potentially liable as owners or operators of the Site must retain, in addition, all Records that relate to the liability of any other person under CERCLA with respect to the Site. Each Settling Defendant must also retain, and instruct its contractors and agents to preserve, for the same period of time specified above all non-identical copies of the last draft or final version of any Records (including Records in electronic form) now in its possession or control or that come into its possession or control that relate in any manner to the performance of the Work, provided, however, that each Settling Defendant (and its contractors and agents) must retain, in addition, copies of all data generated during the performance of the Work and not contained in the aforementioned Records required to be retained. Each of the above record retention requirements shall apply regardless of any corporate retention policy to the contrary.

79.     At the conclusion of this record retention period, Settling Defendants shall notify the United States at least 90 days prior to the destruction of any such Records, and, upon request by the United States, and except as provided in ¶ 74 (Privileged and Protected Claims), Settling Defendants shall deliver any such Records to EPA.

80.     Each Settling Defendant certifies individually that, to the best of its knowledge and belief, after thorough inquiry, it has not altered, mutilated, discarded, destroyed, or otherwise disposed of any Records (other than identical copies) relating to its potential liability regarding the Site since notification of potential liability by the United States or the State and that it has fully complied with any and all EPA and State requests for information regarding the Site pursuant to Sections 104(e) and 122(e)(3)(B) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e)(3)(B), and Section 3007 of RCRA, 42 U.S.C. § 6927, and state law.

## XX.   NOTICES AND SUBMISSIONS

81.     All approvals, consents, deliverables, modifications, notices, notifications, objections, proposals, reports, and requests specified in this Consent Decree must be in writing unless otherwise specified. Whenever, under this Consent Decree, notice is required to be given, or a report or other document is required to be sent, by one Party to another, it must be directed to the person(s) specified below at the address(es) specified below. Any Party may change the person and/or address applicable to it by providing notice of such change to all Parties. All notices under this Section are effective upon receipt, unless otherwise specified. Notices required to be sent to EPA, and not to the United States, should not be sent to the DOJ. Except as otherwise provided, notice to a Party by email (if that option is provided below) or by regular mail in accordance with this Section satisfies any notice requirement of the Consent Decree regarding such Party.

| | |
|---|---|
| **As to the United States**: | EES Case Management Unit<br>U.S. Department of Justice<br>Environment and Natural Resources Division<br>P.O. Box 7611<br>Washington, D.C. 20044-7611<br>eescdcopy.enrd@usdoj.gov<br>Re: DJ # 90-11-3-08633/7 |
| **As to EPA**: | Bridget Williams<br>EPA Project Coordinator – East Helena Site<br>U.S. Environmental Protection Agency<br>Region 8 (8SEM-RBC)<br>10 West 15th Street, Suite 3200<br>Helena, Montana 59626<br>Williams.Bridget@epa.gov<br>(406) 457-5013 |

**As to the Regional Financial Management Officer**:

Regional Financial Management Office
Superfund Cost Recovery
Financial Management Unit (MSD-FM-B)
U.S. EPA, Region 8
1595 Wynkoop Street
Denver, Colorado 80202
Johnson.Karren@epa.gov

**At to EPA Cincinnati Finance Center**:

EPA Cincinnati Finance Center
26 West Martin Luther King Drive
Cincinnati, Ohio 45268
cinwd_acctsreceivable@epa.gov

**As to BNSF Railway Company**:

Mark Engdahl
Manager – Environmental Remediation
BNSF Railway Company
800 N. Last Chance Gulch, Suite 101
Helena, MT  59601
mark.engdahl@bnsf.com
(406) 256-4048

and to

Brooke Kuhl
Senior General Attorney
BNSF Railway Company
201 West Railroad Street, Suite 300
Missoula, MT  59802
brooke.kuhl@epa.gov
(406) 256-4293

**As to Montana Rail Link, Inc.**:  Devin Clary
            Director of Environmental
            Montana Rail Link, Inc.
            101 International Drive
            Missoula, MT  59808
            dclary@mtrail.com
            (406) 523-1582

            and to

            Joseph M. Racicot
            Vice President of Administration & General Counsel
            Montana Rail Link, Inc.
            101 International Drive
            Missoula, MT  59808
            jracicot@mtrail.com
            (406) 523-1382

## XXI.  RETENTION OF JURISDICTION

82.  This Court retains jurisdiction over both the subject matter of this Consent Decree and Settling Defendants for the duration of the performance of the terms and provisions of this Consent Decree for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XIII (Dispute Resolution).

## XXII. APPENDICES

83.  The following appendices are attached to and incorporated into this Consent Decree:

"Appendix A" is the ROD.

"Appendix B" is the SOW.

"Appendix C" is the description and/or map of the Site.

"Appendix D" is the description and/or map of the Railyard Property.

## XXIII.    MODIFICATION

84.  Except as provided in ¶ 12 (Modification of SOW or Related Deliverables), material modifications to this Consent Decree, including the SOW, shall be in writing, signed by the United States and Settling Defendants, and shall be effective upon approval by the Court. Except as provided in ¶ 12, non-material modifications to this Consent Decree, including the

SOW, shall be in writing and shall be effective when signed by duly authorized representatives of the United States and Settling Defendants. A modification to the SOW shall be considered material if it implements a ROD amendment that fundamentally alters the basic features of the selected remedy within the meaning of 40 C.F.R. § 300.435(c)(2)(ii).

85.     Nothing in this Consent Decree shall be deemed to alter the Court's power to enforce, supervise, or approve modifications to this Consent Decree.

## XXIV.        LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

86.     This Consent Decree shall be lodged with the Court for at least 30 days for public notice and comment in accordance with Section 122(d)(2) of CERCLA, 42 U.S.C. § 9622(d)(2), and 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations that indicate that the Consent Decree is inappropriate, improper, or inadequate. Settling Defendants consent to the entry of this Consent Decree without further notice.

87.     If for any reason the Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XXV. SIGNATORIES/SERVICE

88.     Each undersigned representative of a Settling Defendant to this Consent Decree and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document.

89.     Each Settling Defendant agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree unless the United States has notified Settling Defendants in writing that it no longer supports entry of the Consent Decree.

90.     Each Settling Defendant shall identify, on the attached signature page, the name, address, and telephone number of an agent who is authorized to accept service of process by mail on behalf of that Party with respect to all matters arising under or relating to this Consent Decree. Settling Defendants agree to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons. Settling Defendants need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XXVI.        FINAL JUDGMENT

91.     This Consent Decree and its appendices constitute the final, complete, and exclusive agreement and understanding among the Parties regarding the settlement embodied in the Consent Decree. The Parties acknowledge that there are no representations, agreements, or

understandings relating to the settlement other than those expressly contained in this Consent Decree.

92.     Upon entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the United States and Settling Defendants. The Court enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS __ DAY OF _____, 2022.


_____
United States District Judge

Signature Page for Consent Decree regarding the East Helena Superfund Site

**FOR THE UNITED STATES OF AMERICA:**

*Nathaniel Douglas*
_____
Nathaniel Douglas
Deputy Section Chief
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611
Washington, D.C. 20044-7611

_____
John Sither
Senior Counsel
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611
Washington, D.C. 20044-7611

_____
Leif M. Johnson
United States Attorney
District of Montana
105 East Pine, 2nd Floor
Missoula, Montana  59802

_____
Mark S. Smith
Senior Litigation Counsel
District of Montana
105 East Pine, 2nd Floor
Missoula, Montana  59802

37

Signature Page for Consent Decree regarding the East Helena Superfund Site

**FOR THE U.S. ENVIRONMENTAL**
**PROTECTION AGENCY**

BETSY SMIDINGER    Digitally signed by BETSY
                   SMIDINGER
                   Date: 2022.05.11 08:18:59 -06'00'
_____
Betsy Smidinger
Division Director
Superfund and Emergency Management Division
U.S. Environmental Protection Agency
Region 8

                                    Digitally signed by BRIAN JOFFE
                                    Date: 2022.05.11 10:03:46 -06'00'
_____
Kenneth C. Schefski
Regional Counsel
Office of Regional Counsel
U.S. Environmental Protection Agency
Region 8

MAX          Digitally signed by MAX
             GREENBLUM
GREENBLUM    Date: 2022.05.11
             10:15:02 -06'00'
_____
Max Greenblum
Senior Assistant Regional Counsel
Office of Regional Counsel
U.S. Environmental Protection Agency
Region 8 (ORC-LEC)
1595 Wynkoop Street
Denver, Colorado 80202-1129

Signature Page for Consent Decree regarding the East Helena Superfund Site

**FOR** Montana Rail Link**:**

4-20-2022
Dated

Name: Heather Mattson
Title: Vice President of Finance & Accounting
      Montana Rail Link, Inc.

Agent Authorized to Accept Service   Name (print):   Heather Mattson
on Behalf of Above-signed Party:     Title:          VP Finance & Accounting
                                     Company:        Montana Rail Link, Inc.
                                     Address:        101 International Drive
                                                     Missoula, MT 59808
                                     Phone:          (406) 523-1503
                                     email:          hmattson@mtrail.com

Signature Page for Consent Decree regarding the East Helena Superfund Site

**FOR** BNSF Railway Company:

4/21/2022
Dated

Name: John Lovenburg
Title: Vice President, Environment & Sustainability
BNSF Railway Company

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print): Michelle T. Friend
Title: Partner
Company: Hedger Friend, PLLC
Address: 2806 Central Ave, Suite G
Billings, MT 59102-4661
Phone: (406) 896-4100
email: mfriend@hedge-law.com